IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PFS INVESTMENTS, INC., PRIMERICA )
FINANCIAL SERVICES, INC., RONALD )
P. BARNES, RANDALL L. RADER and )
MARCUS SONNIER, )
                                   )
      Petitioners, )
                                     )
v. )      CIVIL ACTION NUMBER
                                     )
KEVIN J. IMHOFF, )
                                     )
      Respondent. )

## VERIFIED PETITION TO COMPEL ARBITRATION

      Petitioners PFS Investments, Inc., Primerica Financial Services, Inc., Ronald P. Barnes,

Randall L. Rader and Marcus Sonnier, pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. §

4, seek a judgment compelling Respondent Kevin J. Imhoff to arbitrate the claims he has

asserted in a lawsuit pending in state court against Petitioners as required by the Rules of the

Financial Industry Regulatory Authority ("FINRA") and Mr. Imhoff's agreement to be bound by

those Rules.  The grounds for this Petition are as follows:

### I. Parties, Jurisdiction and Venue

      1.     Petitioner PFS Investments, Inc. is a Georgia corporation with its principal place

of business in Georgia.

      2.     Petitioner Primerica Financial Services, Inc. is a Nevada corporation with its

principal place of business in Georgia.

      3.     Petitioner Ronald P. Barnes is a resident citizen of Tennessee.

      4.     Petitioner Randall L. Rader is a resident citizen of Tennessee.

      5.     Petitioner Marcus Sonnier is a resident citizen of Georgia.

6.     Respondent Kevin J. Imhoff is a resident citizen of Michigan.

7.     The amount in controversy, measured by the amount in controversy in Mr. Imhoff's underlying state-court lawsuit against Petitioners (*see Vaden v. Discover Bank*, 129 S. Ct. 1262, 1273-75 (2009) (federal court must "look through" a petition to compel arbitration to the parties' underlying, substantive dispute to assess jurisdiction)), exceeds $75,000, exclusive of interest and costs. Mr. Imhoff's state-court lawsuit seeks a monetary judgment "in excess of Two Hundred and Fifty Thousand Dollars" for each of multiple counts against Petitioners, as well as treble damages, attorneys' fees and equitable relief. A copy of Mr. Imhoff's original state court Complaint is attached hereto as Exhibit "A," and his Amended Complaint is attached hereto as Exhibit "B."

8.     Because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, this Court has jurisdiction under 28 U.S.C. § 1332.

9.     The additional defendant in the state court action – Nancy McClintic – is not joined as a party to this Petition. Ms. McClintic is a resident citizen of Michigan, but under controlling Sixth Circuit precedent, she is not an indispensable party in a petition to compel arbitration. *See Painewebber, Inc. v. Cohen*, 276 F.3d 197, 202-06 (6th Cir. 2001) (branch manager of broker-dealer who was a defendant in state court action was not indispensable to the broker-dealer's petition to compel arbitration: "[a]ny ruling to the contrary would virtually eliminate the availability of federal courts to enforce arbitration clauses in diversity cases by the simple expedient of one of the parties filing a preemptive suit in state court with at least one non-diverse defendant.").

10.     Venue is proper in this District because the arbitration proceeding agreed to by the parties must occur in Detroit, Michigan. *See FINRA Rule 13213(a)(1)* ("In cases involving

2

an associated person, the Director will generally select the hearing location closest to where the associated person was employed at the time of the events giving rise to the dispute ....").  The hearing location closest to Mr. Imhoff's association with PFS Investments, Inc. is located in Detroit.[1]  Under 9 U.S.C. § 4, the proper venue for a petition to compel arbitration is the district in which the arbitration is to take place.  *Management Recruiters Int'l v. Bloor*, 129 F.3d 851, 854 (6th Cir.1997) ("where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4.").  Moreover, by agreeing to FINRA's Rules, and particularly Rule 13213, Imhoff has consented to the venue of this District for arbitration proceedings and for court proceedings relating to his obligation to arbitrate.

## II. Facts

**A.      Mr. Imhoff's Status as a Registered Representative and His Agreement to Arbitrate**

11.      PFS Investments, Inc. ("PFSI") is a broker-dealer registered with the Securities and Exchange Commission under the Investment Company Act of 1940, and is a member of FINRA.

12.      FINRA is a self-regulatory organization governing participants in the securities industry.

13.      Kevin Imhoff was a registered representative of PFSI from March 1986 through August 2008.  As a registered representative, Mr. Imhoff had the ability to sell securities products offered by PFSI and to receive commissions for doing so.  Mr. Imhoff earned commissions from PFSI while he was associated with PFSI.

---

[1] FINRA's hearing locations are listed on the internet at http://www.finra.org/ArbitrationMediation/Contacts/DRRegionalOfficesHearingLocations.

14.     In order to become a registered representative, Mr. Imhoff was required to register with FINRA (or its predecessor, the National Association of Securities Dealers or "NASD") by executing a form U-4.  The U-4 form submitted when a person becomes a registered representative contains the following agreement: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules ... [of FINRA] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*."  (italics in original)  *Cf. Franz v. Allegeny Investments, Ltd.*, 2010 WL 582681, at *2 (N.D. Ohio Feb. 11, 2010) (quoting this language from Form U-4 and compelling arbitration of registered representative's claims).  An example of one of the U-4 Forms submitted to FINRA by Mr. Imhoff, containing his agreement to arbitrate, is attached hereto as Exhibit "C."

15.     Mr. Imhoff was registered in FINRA's Central Registration Depository ("CRD") system under the identification number 1464384, and took several examinations administered by FINRA in order to be able to sell securities – including the Series 6, 26, 63 and 65 examinations. He is still, to this day, registered with FINRA and actively engaged in the sale of securities.  A copy of Mr. Imhoff's CRD record, downloaded from the FINRA website, is attached hereto as Exhibit "F."

16.     FINRA's Rules specifically require the arbitration of "industry" disputes.  The relevant Rule, 13200(a), provides that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons."  A "member" is a broker dealer such as PFSI (Rule 13100(o)), while an "Associated Person" is defined in Rule

13100(r) as "[a] natural person who is registered or has applied for registration under the Rules of FINRA." Mr. Imhoff is an "Associated Person" under the FINRA Rules.

17.     The other Petitioners also are covered by the obligation to arbitrate under Rule 13200. Petitioners Ronald Barnes and Randall Rader are registered representatives of PFSI, currently and during the time Mr. Imhoff was associated with PFSI. Petitioner Marcus Sonnier is an employee of PFSI who is also registered as a PFSI representative with FINRA. All three are therefore "Associated Persons," and Mr. Imhoff's claims against them must be arbitrated under Rule 13200.

18.     Petitioner Primerica Financial Services, Inc. is an affiliate company of PFSI and has been sued as a defendant in Mr. Imhoff's state-court lawsuit. However, the claims against Primerica Financial Services, Inc. all arise from conduct related to PFSI's business, such as the settlement by PFSI of customer claims asserted by securities customers against Mr. Imhoff; PFSI's regulatory filings with FINRA disclosing claims against Mr. Imhoff and customer complaints lodged against Mr. Imhoff; PFSI's transfer of PFSI customers previously assigned to Mr. Imhoff prior to his resignation to other PFSI registered representatives after his resignation (Messrs. Barnes and Rader, as well as Ms. McClintic, who is also a PFSI registered representative); and Mr. Imhoff's complaint that he should have been allowed to take his "Book of Business" (i.e., securities customers) to a competing firm, despite the fact that his contracts provided that the customers belonged to PFSI, not Mr. Imhoff. *See* Paragraph 40 below. All of Mr. Imhoff's claims arise directly from the securities business of PFSI and Mr. Imhoff's participation in that business. Thus, although he has attempted to evade arbitration by naming

the incorrect party as a defendant in his state-court lawsuit, PFSI is the real party in interest.[2]

The claims against Primerica Financial Services, Inc. and the other parties must be arbitrated

because those claims arise out of the securities business of PFSI.

**B.    Mr. Imhoff's Violation of FINRA's Rules By Commencing a Lawsuit in State Court**

19.    On December 20, 2010, Mr. Imhoff commenced his state-court lawsuit in the

Circuit Court of Eaton County, Michigan.  A copy of his original Verified Complaint is attached

hereto as Exhibit "A."  The Complaint generally alleges that the customers who purchased

PFSI's securities products through Mr. Imhoff constitute Mr. Imhoff's property and comprise a

"Book of Business" that belongs to him.  This assertion is flatly contradicted by Mr. Imhoff's

agreements with PFSI and its affiliated companies.

20.    The filing of this complaint in state court was, itself, a violation of FINRA's

Rules.  *See* FINRA IM-13000 ("It may be deemed conduct inconsistent with just and equitable

principles of trade and a violation of Rule 2010 for a member or a person associated with a

member to: (a) fail to submit a dispute for arbitration under the Code as required by the Code.").

21.    The triggering event for Mr. Imhoff's complaint has been the assertion of several

claims against him by several of PFSI's securities customers formerly assigned to him.  In

particular, the customers have alleged that, while Mr. Imhoff was affiliated with PFSI in 2006

and 2007, he fraudulently sold them condominiums located in Panama City, Florida as an

investment.  According to the customers, Mr. Imhoff persuaded them to purchase these

condominiums from a business operated by his wife, Ruth Imhoff, called Splendid Properties,

LLC.  The customers further allege that Mr. Imhoff misrepresented the "mark-up" or profit on

the condominiums, which the customers allege was more than $100,000 per condominium unit,

---

[2] Mr. Imhoff's state court pleadings even refer to Primerica Financial Services, Inc. and PFSI collectively.  *See* Amended Complaint, ¶2.

even though Splendid Properties purchased and then sold the condominiums to the customers within a few days, or sometimes on the same day. Two of the customers initiated an arbitration proceeding on March 30, 2010 before FINRA against Imhoff and PFSI which is currently pending and set for hearing beginning at the end of April, 2011. A copy of the Statement of Claim in this arbitration is attached hereto as Exhibit "D." The claims against PFSI in that arbitration are entirely derivative of Mr. Imhoff's alleged conduct regarding the sale of condominiums outside of PFSI and in contravention of PFSI's compliance mandates. Several other customers have sent demand letters to PFSI, seeking compensation for damages they allege to have suffered from fraud in connection with Mr. Imhoff's sale of condominiums to them. As a result of the damages it has sustained from claims asserted arising from Mr. Imhoff's conduct, PFSI intends to seek compensation from Mr. Imhoff through a counterclaim to be asserted in the FINRA arbitration that this Petition seeks to compel.

22.    If Mr. Imhoff was engaged in the sale of condominiums, he did so in violation of PFSI's policies and FINRA's Rules. In particular, because the condominiums were not an investment approved by PFSI, Mr. Imhoff's conduct, as alleged by the customers, constituted "selling away." FINRA's Rules prohibit registered representatives from engaging in outside business activities without properly notifying PFSI and obtaining approval.

**C.    Mr. Imhoff's Efforts to Evade His Obligation to Arbitrate**

23.    The original complaint filed by Mr. Imhoff in state court was not served on any of the defendants, but Mr. Imhoff's counsel informed PFSI's counsel of the existence of the lawsuit when it was filed.

24.    After PFSI's counsel obtained a copy of the complaint, PFSI's counsel advised Mr. Imhoff's counsel on December 22, 2010 that Mr. Imhoff's claims were required to be

arbitrated pursuant to FINRA's Rules.  PFSI's counsel assisted Mr. Imhoff's counsel in locating

the relevant FINRA Rules on the internet during a telephone conversation.  Later that same day,

PFSI's counsel sent an e-mail to Mr. Imhoff's counsel attaching a decision by Judge Zatkoff of

this District, compelling arbitration under FINRA's Rules and repeating that "Mr. Imhoff has a

clear obligation to arbitrate his claim."  A copy of this e-mail is attached hereto as Exhibit "E."

25.     Instead of complying with his obligation to arbitrate, Mr. Imhoff filed a "First

Amended Verified Complaint" in state court on January 5, 2011.  A copy of this Amended

Complaint is attached hereto as Exhibit "B."  The changes in the Amended Complaint constitute

attempts by Mr. Imhoff to evade his obligation to arbitrate his claims.

26.     In particular, the Amended Complaint contains the following assertion, in

Paragraph 101: "Additionally, although FINRA Rules typically apply to and/or govern disputes

such as those between Mr. Imhoff and the defendants, the defendants have committed acts

inconsistent with a right to arbitrate, and/or so prejudiced the rights of Mr. Imhoff by their

actions that they have lost any right they may have had to arbitrate. Finally, FINRA Rules

specifically allow for the utilization of state and/or federal courts for the very type of injunctive

relief sought by Mr. Imhoff, as more fully set forth in the counts below."  At the end of the

Amended Complaint, beginning with Paragraph 241, the Amended Complaint adds several

claims for equitable and injunctive relief (i.e., a declaratory judgment that the defendants

wronged Mr. Imhoff an therefore owe him money; an accounting of the commissions from "his

Book of Business"; and an injunction requiring the defendants to pay commissions to Mr. Imhoff

from his "Book of Business").

27.     The addition of these "equitable" claims is a sham designed to avoid arbitration

based on Mr. Imhoff's misunderstanding of FINRA's Rules, and particularly Rule 13804.  Rule

13804(a)(1) provides that "[i]n industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction." However, the rule is limited to only "temporary injunctive orders," and provides that the party seeking such temporary relief from a court "must, at the same time, file with the Director a statement of claim requesting permanent injunctive and all other relief with respect to the same dispute in the manner specified under the Code." *See* FINRA Rule 13804(a)(2). Moreover, the Rule requires FINRA to appoint an arbitration panel to hear the dispute within 15 days, at which time the Panel has the authority to require the parties to "jointly ... move to modify or dissolve" the court's temporary injunctive order. *See* FINRA Rule 13804(b)(1) & (b)(5). In other words, court involvement is limited to temporary injunctive relief and nothing more. Mr. Imhoff has not petitioned for any such relief.

28.     Mr. Imhoff has not submitted any statement of claim with FINRA as required by Rule 13804(a)(2).

29.     Moreover, his claims for equitable relief, which were asserted only after his counsel had been informed of his obligation to arbitrate, are an obvious sham to avoid arbitration. The claims for equitable relief are merely recharacterized claims for damages (i.e., an accounting to determine how much in commissions Mr. Imhoff claims to be owed; an injunction prohibiting the defendants from "converting" commissions allegedly owed to Mr. Imhoff on his "Book of Business," and the like). The fact that these claims seek predominantly monetary relief, as well as the timing of their assertion in support of Mr. Imhoff's effort to resist his obligation to arbitrate, establish that they are merely a tactical maneuver designed to avoid arbitration.

### III. Mr. Imhoff's Claims Are Subject to Arbitration

9

30.     Mr. Imhoff admits that he is bound by FINRA's Arbitration Rules, and even acknowledges in Paragraph 101 of his Amended Complaint that "FINRA Rules typically apply to and/or govern disputes such as those between Mr. Imhoff and the defendants."

31.     "The FAA manifests 'a liberal federal policy favoring arbitration agreements.'" *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008).

32.     The Sixth Circuit has prescribed a simple, two-step inquiry that applies when a party seeks to compel arbitration: "Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008).  Both of these two elements are met here.

**A.     A Valid Agreement to Arbitrate Exists.**

33.     Mr. Imhoff agreed to arbitrate in accordance with FINRA's Rules when he signed his U-4 Forms and registered with FINRA as a registered representative.

34.     Mr. Imhoff concedes in Paragraph 101 of his Amended Complaint that he is bound by FINRA's Arbitration Rules.

35.     Thus, a valid agreement to arbitrate exists.

**B.     Mr. Imhoff's Claims Are Within the Scope of His Arbitration Agreement.**

36.     In assessing whether a particular dispute falls within the scope of a broadly-worded arbitration agreement, the Sixth Circuit has held that "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Watson Wyatt*, 513 F.3d at 650.  Moreover, "[g]iven the directives of the Supreme Court and this Circuit, the

district court was required to give a general presumption of arbitrability and to resolve any

doubts in favor of arbitration 'unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* "It is well

established that any doubts regarding arbitrability must be resolved in favor of arbitration."

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573

(6th Cir. 2003).

     37.    Rule 13200 of FINRA's Arbitration Rules requires arbitration of disputes if they

are "between or among" members and associated persons and if the dispute "arises out of the

business activities of a member or an associated person."

     38.    Mr. Imhoff's claims satisfy both elements of Rule 13200, and Paragraph 101 of

his Amended Complaint admits as much.

     39.    First, there is no question that his claims create a dispute between Mr. Imhoff,

who is an "associated person" and a "member" – PFSI – as well as three other "associated

persons" – Ronald Barnes, Randall Rader and Marcus Sonnier. As noted above, the claims

against Primerica Financial Services, Inc., are asserted against the incorrect party and relate

solely to the alleged conduct of PFSI in connection with its securities customers formerly

assigned to Mr. Imhoff.[3] Paragraph 101 of Mr. Imhoff's Amended Complaint acknowledges that

"FINRA Rules typically apply to and/or govern disputes such as those between Mr. Imhoff and

the defendants."

---

[3] Even if Primerica Financial Services, Inc. is deemed a non-party to the FINRA arbitration agreements of the other parties, the claims against it are nevertheless arbitrable. "The Sixth Circuit recognizes that 'nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles.'" *Binder v. Medicine Shoppe Int'l, Inc.*, 2010 WL 2854308, at *6 (E.D. Mich. July 20, 2010). These principles include estoppel. *id.*, and in the present case Mr. Imhoff is estopped from evading his obligation to arbitrate by asserting claims against Primerica Financial Services instead of PFSI.

40.     Moreover, Mr. Imhoff's claims arise out of the business activities of Mr. Imhoff and PFSI:

a.  Mr. Imhoff describes his "Book of Business," which he wrongly claims ownership of, as including "eleven thousand (11,000) investment accounts and over Sixty Million Dollars ($60 million) of assets under management." (Amended Complaint ¶10).

b.  Imhoff describes himself as having been one of PFSI's "top securities producers." (*Id.*).

c.  A large portion of Mr. Imhoff's complaint is devoted to his disagreement with how PFSI handled a securities customer complaint involving an Individual Retirement Account redemption.  (*Id.* at ¶¶16-27).  Mr. Imhoff claims that PFSI paid the customer too much in settlement for the purpose of creating an event that would need to be reported to FINRA and which would cause FINRA to investigate him.  (*Id.* at ¶67-68, 76).

d.  Mr. Imhoff describes his resignation from Primerica as "changing broker/dealers."  (*Id.* at ¶30).

e.  Mr. Imhoff asserts that Marcus Sonnier was acting on behalf of the "Securities Investigations" unit of Primerica when he sent letters to Mr. Imhoff's former clients telling them that Mr. Imhoff was no longer with Primerica.  (*Id.* at ¶¶51-53).

f.  Mr. Imhoff bizarrely asserts that PFSI and MetLife (which sells variable annuities through PFSI's registered representatives, and which is also a FINRA "member") violated the privacy rights of PFSI's securities customers formerly assigned to

him by reassigning their PFSI and MetLife securities and variable annuity

accounts to other PFSI registered representatives after Mr. Imhoff resigned.  (*Id.*

at ¶¶58-60).  Presumably, Mr. Imhoff believes that he should have continued to be

the servicing representative on these accounts after he was no longer a PFSI

representative.  Ironically, if PFSI did such a thing, it would violate the very

privacy laws Mr. Imhoff invokes, including the SEC's Regulation S-P, which was

promulgated under the Gramm-Leach-Bliley Act.

g.   Imhoff complains about PFSI's submission of a Form U-5 amendment to FINRA

regarding an outside business activity.  (*Id.* at ¶66).

h.   Mr. Imhoff complains that PFSI made telephone calls to its own securities clients,

asking about Mr. Imhoff's handling of their securities accounts.  (*Id.* at ¶80).

i.   Mr. Imhoff asserts that three sets of consumer complaints asserted against himself

and PFSI by securities clients, one of which is currently pending in a FINRA

arbitration proceeding, were encouraged by PFSI.  (*Id.* at ¶¶82 & 99).

j.   Mr. Imhoff complains that the State of Michigan investigated the allegations

reported by PFSI on Mr. Imhoff's U-4 filings with FINRA.  (*Id.* at ¶97).  He also

claims that he was denied an appointment with an insurance company because of

the allegations surrounding his involvement in selling condominiums in Panama

City to PFSI securities clients, which PFSI was required to report on his U-4.  (*Id.*

at ¶99).

41.   Based on the allegations in his Amended Complaint, there can be no doubt that

Mr. Imhoff's claims arise out of his and PFSI's business activities.  His claims therefore fall

squarely within the scope of the agreement to arbitrate set forth in FINRA Rule 13200.

**C.      FINRA Rule 13804 Does Not Alter Mr. Imhoff's Duty to Arbitrate**

42.      As noted above, Mr. Imhoff, after being advised of his obligation to arbitrate his claims, attempted to evade that obligation by amending his complaint in state court.  The Amended Complaint does not change the underlying basis for Mr. Imhoff's claims, but rather merely adds several claims for equitable relief in a misguided effort to avoid arbitration under FINRA Rule 13804.

43.      Rule 13804 is irrelevant to Mr. Imhoff's duty to arbitrate because (a) he has not satisfied the requirements for invoking the Rule by simultaneously commencing an arbitration before FINRA; (b) he is not seeking temporary equitable relief in the state court (which is the only exception to arbitration under FINRA rules); and (c) his claims for equitable relief are a transparent maneuver designed solely to avoid arbitration and should therefore be disregarded.

44.      First, Mr. Imhoff cannot seek any sort of injunctive relief in Court because he did not simultaneously commence an arbitration proceeding before FINRA seeking permanent injunctive relief and all other relief he seeks.  This simultaneous filing is required by the plain language of Rule 13804(a)(2): "A party seeking a temporary injunctive order from a court with respect to an industry or clearing dispute required to be submitted to arbitration under the Code must, at the same time, file with the Director a statement of claim requesting permanent injunctive and all other relief with respect to the same dispute in the manner specified under the Code."

45.      Mr. Imhoff's failure to commence an arbitration proceeding before FINRA frustrates the purpose of the Rule, which is to allow a court to award "temporary" injunctive relief during the 15-day period within which FINRA must appoint an arbitration panel to hear the case.  This intent is apparent in Rule 13804(b)(1) and (b)(5), which calls for the expedited

appointment of an arbitration panel and further provides that the panel, once constituted, assumes full responsibility for the dispute, including the temporary injunctive relief sought from the court. *See Smith Barney, Inc. v. Darling*, 2009 WL 1544756, at *1 (E.D. Wis. June 3, 2009) ("The relief Smith Barney seeks is temporary, pending an arbitration hearing on the merits before the Financial Industry Regularity Authority ('FINRA') under Rule 13804 of the FINRA Code of Arbitration Procedure. Any order this court enters would run only until the arbitration panel is able to hear the matter. Entry of a temporary injunction by the court would trigger the requirement that an expedited arbitration be held within fifteen days of entry of any such order.") (citations omitted).  Mr. Imhoff has not commenced any arbitration proceeding, and has therefore made it clear that the equitable relief he seeks is not the kind of "temporary injunctive order" permitted by FINRA's rules, but rather is intended to evade arbitration altogether.

46.    Mr. Imhoff's failure to initiate a FINRA arbitration as required by Rule 13804, standing alone, precludes the state court from awarding any injunctive relief to him.  *See Moran v. Piper Jaffray & Co.*, 2008 WL 3992716, at *1 (N.D. Cal. Aug. 25, 2008) ("Although Plaintiff contends that this Court may hear his motion for preliminary injunction pursuant to Rule 13804, Plaintiff has not complied with the Rule's requirement that a party seeking temporary injunctive relief from a court must, at the same time, file a statement of claims with FINRA which seeks permanent injunctive relief. ... Without any authority demonstrating that the Court may waive the literal requirements of Rule 13804, the Court is left with solely the language of the Rule. According to the plain language of Rule 13804, a party seeking injunctive relief from a court on a dispute which is required to be submitted to arbitration must simultaneously file a statement of claims with FINRA seeking permanent injunctive relief. Plaintiff failed to do so here.

Accordingly, the Court GRANTS Defendants' petition to compel arbitration and motion to stay this action pending arbitration.").

47.     Further, Mr. Imhoff's claims for equitable relief are improper for consideration by a court because they are not necessary to effectuate the arbitration proceeding to which he agreed.  As Judge Rosen explained in *Kwasny Co. v. Acrylicon Int'l, Ltd.*, 2010 WL 2474788 (E.D. Mich. June 11, 2010),

> the courts generally construe their authority to grant injunctive relief in connection with an arbitrable dispute as limited to such relief as is necessary to avoid "render[ing] the process of arbitration meaningless or a hollow formality." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir.1995); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214-15 (7th Cir.1993); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053-54 (2d Cir.1990). In this case, Defendant has not moved for a preliminary award of the injunctive relief sought under Count One of its counter-complaint, nor is there otherwise any indication in the record that such relief is necessary to preserve the viability of the parties' chosen method of dispute resolution, the arbitration process. Under these circumstances, the language in the Agreement preserving the parties' opportunity to seek injunctive relief cannot be viewed as overriding the parties' stated intent to arbitrate any disputes arising from the Agreement, but rather as supportive of this agreement to arbitrate.

*Id.* at *7.

48.     The equitable relief Mr. Imhoff seeks is in no way necessary to "avoid rendering the process of arbitration meaningless or a hollow formality" or to "preserve the viability of ... the arbitration process."  Rather, the equitable claims he asserts are merely alternative formulations of the claims for damages he originally asserted.  For example, he seeks an accounting of the commissions he claims should have been paid to him after he resigned from Primerica, in support of his claim to those same commissions as damages.  He also seeks an injunction precluding PFSI from reassigning his former securities clients to other PFSI registered representatives, an event he alleges occurred *over two years ago* (Amended Complaint, ¶58) and for which he claims damages.  Further, he seeks a declaratory judgment that the defendants acted

unlawfully toward him by misappropriating the commissions due on "his" "Book of Business,"
and that therefore the defendants owe him damages.  (*Id.*, ¶¶242-43).

49.     Mr. Imhoff does not allege, nor could he, that any of the equitable relief he seeks
is necessary to effectuate the arbitration process.  Instead, the equitable relief he seeks is merely
a reformulation of his claims for damages, which unquestionably can – and must – be resolved
by the arbitrators.  Under the rationale expressed in *Kwasny*, his claims for equitable relief do not
vitiate his obligation to arbitrate.

50.     Finally, the Court should see Mr. Imhoff's newly-asserted claims for equitable
relief for what they are: a transparent effort to avoid his duty to arbitrate.  As set forth above, Mr.
Imhoff's original state court complaint asserted no claims for any sort of equitable relief.  Just
two weeks later, he filed an Amended Complaint seeking such relief.  The only event that
occurred in the meantime was the communication from PFSI's counsel informing Mr. Imhoff's
counsel that the claims asserted in the original complaint had to be arbitrated.  The assertion of
claims for equitable relief in the Amended Complaint was merely a tactical maneuver designed
to avoid arbitration, as the Amended Complaint asserts (incorrectly) that FINRA's Rules permit
such relief to be sought in court.  *See* Amended Complaint, ¶101.

51.     It is apparent both from the questionable nature of the equitable relief sought and
the timing of the assertion of the claims for such relief that they were asserted merely as a way
for Mr. Imhoff to attempt to dodge his obligation to arbitrate.  This Court should avoid rewarding
Mr. Imhoff's transparent gamesmanship.

**D.     Petitioners Have Not Waived Their Right to Compel Arbitration.**

52.     Mr. Imhoff's final contention appears to be that Petitioners have somehow waived
their right to compel arbitration of his claims, even though those claims were asserted for the

first time on December 20, 2010 and no activity whatsoever has occurred in his state-court lawsuit. *See* Amended Complaint, ¶101. Mr. Imhoff does not identify any conduct which he asserts supports this contention.

53.     The standard for establishing waiver of the right to compel arbitration in this Circuit is a very heavy one. "Because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[A] party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Cornerworld Corp. v. Timmer*, 2010 WL 4702343, at *1 (W.D. Mich. Nov. 12, 2010), *citing Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010).

54.     Mr. Imhoff cannot satisfy either of these tests. First, he does not identify any action by any of the Petitioners that is "completely inconsistent with any reliance on an arbitration agreement." He alleges various interactions between the parties such as threats of legal action and negotiations, but the Sixth Circuit has held that such "posturing" activities are not inconsistent with an intention to arbitrate. *See Highlands*, 350 F.3d at 574 (Finding no waiver from a party's threats and correspondence before litigation was commenced: "JDHP's July 2001 letter was sent during pre-commencement negotiations. It really amounts to nothing more than the typical posturing that may occur where one party is attempting to 'stare down' the other party in the hope that the other party will simply give up." "Given the strong preference in favor of arbitration and against waiver, we cannot infer a waiver of arbitration under the 2001 Contract based solely on the parties' conduct at this stage of their dispute.").

55.    Likewise, there is no basis for Mr. Imhoff to assert any delay on Petitioners' part in invoking arbitration which has caused him "actual prejudice." Quite the contrary – PFSI's counsel informed Mr. Imhoff's counsel *two days* after his state court complaint was filed that Mr. Imhoff's claims should be arbitrated. *See* Exhibit D attached hereto. Further, none of the Petitioners has taken any action to litigate Mr. Imhoff's claims in state court; they have not even filed answers as of the present date and have sought neither discovery nor an adjudication of Mr. Imhoff's claims and PFSI's counterclaims in court. Under these circumstances, it is impossible for Mr. Imhoff to make any claim of waiver.[4]

### IV. Conclusion and Prayer for Relief

56.    For the reasons set forth above, the claims asserted against Petitioners in Mr. Imhoff's state-court lawsuit are all subject to arbitration.

57.    Petitioners pray that the Court will enter an Order pursuant to 9 U.S.C. § 4 compelling Mr. Imhoff to assert all of his claims in arbitration before FINRA, in accordance with FINRA's Rules and Mr. Imhoff's agreement to abide by those Rules.

58.    Petitioners also request that the Court, if necessary, enter an order enjoining Mr. Imhoff from proceeding further to litigate his claims in state court and/or staying the proceeding in state court. The Sixth Circuit has squarely held that, once a district court determines that a dispute in state court is subject to arbitration, it is appropriate under the Anti-Injunction Act, 28 U.S.C. § 2283, for the district court to stay further proceedings in the state court. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002) ("In the instant case, the Eastern District of Michigan has issued a final judgment finding that the arbitration clause is valid and

---

[4] The Sixth Circuit noted in *Highlands* that "most arbitration waiver cases" involve a party's failure to invoke arbitration in a timely manner when a lawsuit is filed, or some action that interferes with the commencement of an arbitration proceeding. *Highlands*, 350 F.3d at 574. Neither circumstance is presented here.

compelling arbitration under Article 15 of the Agreement. The Simonses' state-court suit seeks to relitigate the validity of the arbitration clause and obtain judicial resolution of the underlying dispute. An injunction of the state proceedings is necessary to protect the final judgment of the district court on this issue.") (citation omitted).

59.     Because Mr. Imhoff's efforts to litigate his claims in state court violate FINRA's Rules and prejudice Petitioners by forcing them to litigate his claims in the wrong forum, Petitioners respect expedited consideration of this Petition.

s/ Raymond W. Henney
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
Detroit, MI   48226
(313) 465-7410
rhenney@honigman.com
(P35860)

Dated:  January 11, 2011

## VERIFICATION

My name is Alexis Ginn.  I am Deputy General Counsel and an Executive Vice President of Primerica Financial Services, Inc. and of PFS Investments, Inc. ("PFSI").  By virtue of my job responsibilities, I am familiar with the membership of PFSI in the Financial Industry Regulatory Authority ("FINRA"), as well as the status of PFSI registered representatives as "associated persons" under FINRA's Rules.  I am also familiar with the records maintained by PFSI relating to its registered representatives.  The factual statements in this Petition are true and correct to the best of my knowledge, and the document attached to this Petition as Exhibit "C" is a true and correct copy of a U-4 Form submitted by Kevin Imhoff to FINRA.  PFSI maintains copies of such documents as a part of the regular course of its business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2011.

Alexis Ginn